**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| X ONE, INC.,<br><br>              Plaintiff,<br><br>      v.<br><br>DOMINO'S PIZZA, INC., DOMINO'S PIZZA LLC, and DOMINO'S PIZZA FRANCHISING LLC,<br><br>              Defendants. | CASE NO. 2:26-cv-311 |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff X One, Inc. ("X One" or "Plaintiff"), for its Complaint against Defendants Domino's Pizza, Inc. ("DPI"), Domino's Pizza LLC ("DPL"), and Domino's Pizza Franchising LLC (referred to herein collectively as "Domino's" or "Defendants"), alleges the following:

## THE PARTIES

1.    Plaintiff is a Delaware corporation with its principal place of business in Livermore, California.

2.    Defendant Domino's Pizza, Inc. is a Delaware corporation with a principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, MI 48106. DPI may be served through its registered agent in Michigan: The Corporation Company, 40600 Ann Arbor Rd. E., Ste. 201, Plymouth, MI 48170.

3.    Defendant Domino's Pizza LLC is a Michigan limited liability company with a principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, MI 48106. DPL may be served through its registered agent in Texas: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

4.    Defendant Domino's Pizza Franchising LLC is a Michigan limited liability company with a principal place of business at 30 Frank Lloyd Wright Dr., Ann Arbor, MI 48106. DPL may be

served through its registered agent in Texas: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

5.   Defendants operate under and identify with the trade name "Domino's."  On information and belief, each of the Defendants directly or indirectly imports, develops, designs, manufactures, uses, distributes, markets, offers to sell, and/or sells products and services in the United Sates, including in this district, and otherwise purposefully directs activities to the same.  On information and belief, the Defendants have been and are acting in concert and are otherwise liable jointly, severally, or in the alternative for a right to relief with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling of at least one infringing product.

## JURISDICTION AND VENUE

6.   This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

7.   Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under Federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq.*).

8.   Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

9.   Personal jurisdiction exists generally over the Defendants because each Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Eastern District of Texas.  Personal jurisdiction also exists over each Defendant because each, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, makes available, and/or markets products within the State of Texas and the Eastern District of Texas that infringe one or more

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                 2

claims of the Patents-in-Suit.  Further, on information and belief, Defendants have placed or contributed to placing infringing products into the stream of commerce, both directly and through intermediaries (including distributors, retailers, authorized dealers, sales agents, and other individuals or entities), knowing or understanding that such products would be sold and used in the United States, including in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b).  For example, Domino's Pizza LLC, and Domino's Pizza Franchising LLC are registered to do business in Texas, and Domino's has transacted business in this District and has committed acts of direct and indirect infringement in this District.

11. Domino's has regular and established places of business in this District. Domino's offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.  As nonlimiting examples, Domino's distributes the Accused Products directly to customers and through its partners.  Among other business, Domino's is in the business of providing mobile ordering in this District.

12. Domino's operates multiple stores in this District.  These stores are regular and established places of business of Domino's.

13. Domino's distributes its mobile ordering application to users located within this District.  The use of the Domino's mobile ordering application in this District provides for mobile ordering from stores in this District.  Domino's puts its mobile ordering application in service within this District to allow users within this District to order from stores in this District in a manner alleged to infringe the asserted claims, as detailed herein.  On information and belief, Domino's derives a portion of its revenue from the use, promotion and distribution of its products and services in this District, including through the use of the Domino's mobile ordering application.

14.     A user is also able to order from Domino's stores in the user's local area, which includes this District.  Ordering is based on the location of the user's mobile device to find nearby stores, including stores in this District.  These locations are held out as a regular and established place of business of Domino's.

15.     The stores within this District are, at the very least, Domino's agents for the purposes of carrying out the mobile-ordering functionality asserted to infringe the claims.

16.     Domino's provides the accused mobile-ordering application, and the application allows a user to select a store, order from the store, and then pick up the order from the store.  The store and its employees are agents of Domino's, at least for that purpose.  To the extent the stores are franchisees, Domino's exercises significant control over these franchisees in relation to the mobile-ordering system.  On information and belief, among other aspects of control, Domino's (1) requires franchisees to purchase the hardware and software for mobile ordering (in addition to upgrades); (2) requires franchisees to participate in mobile ordering; (3) controls how franchisees use their computer systems; (4) has the right to all of the data; (5) has the right to suspend access to the computer systems; (6) has employees visit stores within the District; and/or (7) provides step-by-step instructions to franchisees, including as it relates to mobile ordering.  Domino's also ratifies the stores in this District with the Domino's name, including on the Domino's website, telephone or other directory, and/or by listing the Domino's business name (and associated signage) on the store building.  On information and belief, to the extent stores are franchisees, Domino's requires each franchisee to use the Domino's' signage and logos throughout the store.  On information and belief, to the extent stores are franchisees, Domino's controls the location of each franchisee, including approving the store location.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    4

## PATENTS-IN-SUIT

17.    Plaintiff is the sole and exclusive owner, by assignment, of United States Patent Nos.: (i) 9,854,402 (the '402 Patent); (ii) 9,942,705 (the '705 Patent); (iii) 10,299,071 (the '071 Patent);  (iv) 10,750,310 (the '310 Patent); and (v) 11,778,415 (the '415 Patent) (collectively, the Patents-in-Suit).

18.    By operation of law, the Patents-in-Suit were originally issued and exclusively vested to Mr. Richard Haney, as of their respective dates of issuance.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). Thereafter, by way of written instruments, all rights, title, and interest in the Patents-in-Suit have been assigned to Plaintiff.  As such, Plaintiff has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

19.    The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

20.    The Patents-in-Suit family of patents has been cited over 1,000 times by all of the well-known industry leaders, including multiple citations from industry giants Samsung, Apple, Google, Microsoft, AT&T, T-Mobile, Verizon, Sprint, Virgin Mobile, Facebook, Amazon, Uber, Lyft, Lenovo, Motorola, Huawei, Boeing, Intel, Cisco, Sony, Dell, NEC, Siemens, Palm, Qualcomm, Blackberry, Mitac, Xerox, IBM, HTC, Fujitsu, Hitachi, Nextel, Garmin, Kyocera, Alcatel, Mapquest,  Here, Toyota, Ford, GM, Square, Allstate, State Farm, American Express, Capital One, BOA, USAA and Avaya.

21.    The Patents-in-Suit each include numerous claims defining distinct inventions.  No single claim is representative (for purposes of infringement or validity) of any other. Even a cursory review of the

claims of the Patents-in-Suit reveals numerous patentably distinct elements which preclude any single claim from being viewed as representative.

22.     The priority date of the Patents-in-Suit is at least as early as April 4, 2005. The Patents-in-Suit generally relate to two way position information sharing technology.

23.     As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions, and in particular were ***foundational*** to the technology for two way position information sharing. The teachings of the invention, however, do not require development of new cell phone or PDA technology nor do they require development of new cellular communication infrastructure. The functionality implemented by the software of the invention utilizes existing platforms and infrastructure. *See* '415 Patent at 2:63-67 and Fig. 2A (below).



**Fig. 1 - Fig. 2A of '415 Patent**

24.     At the time of the inventions of the Patents-in-Suit, no two way position information sharing technology existed, and the one way location sharing prior art included On Star and the Mercedes

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                            6

Benz TeleAid services where, via GPS receivers and cellular phone capability built into a car, an aid center can track cars all over the world and speak with the occupants and sense when the cars airbags have deployed. There were also other commercial services which allowed parents to track the locations of their children in a one way location sharing manner. One need of location sharing systems was none of the services at the time allowed the occupants of the car to know where the aid center is or allows the children to know where their parents are. Another need at the time was for a system for use by motorists, hikers, pilots and boatmen to allow them to be able to contact rescuers and know the location of the rescuers as they come to the aid of the stranded person and to allow the rescuers to know the location of the victims they are trying to rescue. The need requires that cell phones have the capability to be reconfigured in the field to add an "instant buddy" to the list of people with whom location information is shared. The prior art kid tracking systems could also not be reconfigured in the field to add new individuals with whom location information was to be shared. *See* '415 Patent at 1:45-67.

25. The inventions of the Patents-in-Suit made clear technological improvements over the prior art. The inventions contemplate 2.5 GHz and 3 GHz Java enabled, web enabled (or similar) cell phones and Personal Digital Assistants or other web enabled wireless products with global positioning system (GPS) receivers and sufficiently large liquid crystal displays for the preferred embodiment. The phones must be web enabled to be able to send and receive TCP/IP or other protocol packets over the internet to the Buddy Watch server. These phones and other wireless devices are programmed with software (programmed at the factory or downloaded from the assignee of the present invention) to have the user interface and functionality described herein to allow mutual tracking and optional position mapping displays of members of groups and of instant buddies coming to the rescue of stranded motorists, hikers, pilots and boatmen. These phones work with a

Buddy Watch™ server coupled to the internet. The server is not limited to any specific language or technology nor is it limited to any specific wired or wireless solution or any particular transmission physical layer or protocol. The teachings of the invention do not require development of new cell phone or PDA technology nor do they require development of new cellular communication infrastructure. The functionality implemented by the software of the invention utilizes existing platforms and infrastructure. In the preferred embodiment, the software of the invention is developed to JAVA specifications. In its primary mode, the process of the invention only allows exchanging and mapping of position data with persons on a Buddy List™ programmed into a Buddy Watch™ (synonym for Buddy Tracker™) device (defined as any of the devices mentioned anywhere in the specification when programmed to operate in Buddy Watch mode or coupled to another device operating in Buddy Watch mode). The user must allow others on his Buddy Lists to "see" his location (location sharing may be turned off), and the user must request to see the location of others on his Buddy Lists to be able to have their positions reported and/or mapped. Position information exchanged via radio transmission on the cellular infrastructure is encrypted so that outsiders cannot see or use location information that is transmitted. A simple menu structure allows easy setup and management of Buddy Watch application programs. The keypad of the phone or PDA is used to enter information into the Buddy Watch enabled device. Online help is available to setup and use the Buddy Tracker application program(s). The teachings of the invention can also be integrated into other products and services such as autos with GPS based navigation systems. This would be done by expanding the navigation system to have a cellular transceiver capable of sending and receiving digital data including position data to the Buddy Tracker server. It could also be done by expanding the GPS navigation system product to have a USB or other interface port to couple the system to a cell phone or PDA of the type

described above. This interface would allow the GPS navigation system to receive position data from the wireless digital data transceiver and map the position data on the GPS navigation system display of the auto. Handheld GPS navigation devices can also be expanded by integrating a cell phone therein or providing a port to interface to a cell phone to exchange position information with the Buddy Tracker server. In a system employing the teachings of the invention, the users can change things on the fly in the field such as: adding groups and members; adding instant buddies, changing the size of the area in which their buddies can be tracked, enabling or disabling the location information sharing function without disabling the phone, etc. *See* '415 Patent at 2:51-3:43.

26.   A block diagram is shown below of a typical cellular system coupled by a gateway and a Wide Area Network such as the internet to a Buddy Watch server to provide the infrastructure of the invention. The cellular system shown in FIG. 16 below is typical and has the same structure and operation as the prior art cellular systems. What is new is the connection between the central switching system and a Buddy Watch server 146 through gateway 148. The inventions added technological improvements to prior art position sharing systems by contemplating Instant Buddy request packets which are generated and sent to the cell transceiver of whatever cell the wireless device of the initiator is registered. These packets contain data which identifies the initiator and the recipient (proposed Instant Buddy) and are addressed to the IP address of the Buddy Watch server 146 in FIG. 16. The packets are recovered by the cell transceiver, sent to the central switching system 102 and routed from there to gateway 148 where they are routed over wide area network 147 to the Buddy Watch server. *See* '415 Patent at 12:46-3:43 and 14:1-10.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    9



**FIG. 16**          SERVER-BASED BUDDY WATCH SYSTEM

27.    The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit.  *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

28.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue.  In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed

that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

29. The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art. *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 4025, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

30. The Patents-in-Suit have been in full compliance with 35 U.S.C. § 287 through either (1) actual notice with affirmative communication of a specific charge of infringement by a specific accused product or device or (2) providing constructive notice—i.e., appropriately marking its products. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Artic Cat II*"). Alternatively, the notice provisions do not apply because the patents are directed to methods and/or the patentee has never made or sold a patented article. *Id.*

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    11

## THE ACCUSED PRODUCTS

31.     Domino's makes, sells, advertises, offers for sale, uses, or otherwise provides, at a minimum, hardware, firmware, and software applications, together with the systems and backend components, that enable communication with and among customer devices, which provide location determination, transmissions to Domino's servers, server-side storage and processing, authorization and sharing controls, map display, and alert generation, covered by the Patents-in-Suit. These components include, but are not limited to, mobile applications, backend ordering systems, location services, and integration with physical store systems, networks, servers, cloud-based infrastructure, and associated software, firmware, and applications operating over wireless and traditional communications networks used to implement and support the Domino's ordering ecosystem. Exemplary, but not limiting, products, systems and methods equipped with and that use the Domino's ordering ecosystem, include the Domino's Pizza USA mobile application, backend ordering systems, location services, and integration with physical store systems, networks.

32.     Collectively, all the foregoing, including all configurations and augmentations thereof, are referred to herein as the "Accused Products."



**Fig. 2 - Screenshot of Domino's Pizza USA app for download used in the systems and methods offered, equipped and used with the Accused Products practicing the inventions of the Patents-in-Suit, available at https://apps.apple.com/us/app/dominos-pizza-usa/id436491861**



**Fig. 3 - Screenshot of Domino's Pizza USA app of systems and methods offered, equipped and used with the Accused Products, showing the rendering of a map on the first wireless cellular device, in a manner that identifies the proposed meeting point and a position of the provider of the requested service, and practicing the inventions of the Patents-in-Suit, available at https://media.dominos.com/multimedia/dominos-pinpoint-delivery/**

## COUNT I
## Infringement of U.S. Patent No. 9,854,402

33.    Plaintiff incorporates the above paragraphs by reference.

34.    Domino's without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

35.    Domino's thus has infringed at least claims 1-9, 11, 14-22 and 24 of the '402 Patent literally and/or under the doctrine of equivalents.

36.    Further, Domino's directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including on its Internet domain web pages.  Further, Domino's has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Domino's to make and use the Accused Products in an infringing manner.  Still further, Domino's is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

37.    As shown above in Figs. 2 and 3, Domino's is making, using, and offering for sale the Accused Products.

38.    Additionally, Domino's owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

39.    On information and belief, Domino's has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '402 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests").  Accordingly, Domino's direct and indirect

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                     15

infringement of the '402 Patent has been undertaken with knowledge of the patent, rendering Domino's liable for direct infringement, indirect infringement, and willful infringement.

40.  In addition or in the alternative, Domino's, through its above described notice, indirectly infringed by way of inducing direct infringement by Domino's customers and/or contributing to the infringement by Domino's customers of the '402 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '402 Patent.

41.  Domino's, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b).  Domino's performed actions that induced infringement that Domino's knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

42.  Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 402 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

43.  Domino's has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                      16

*See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

44.    As one non-limiting example, and as shown in Figs. 2 and 3 above, Domino's, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '402 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

45.    Domino's has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '402 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

46.    The foregoing infringement on the part of Domino's has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '402 Patent.

47.    Each of Domino's aforesaid activities have been without authority and/or license from Plaintiff.

48.    Plaintiff has been damaged as a result of the infringing conduct by Domino's alleged above. Thus, Domino's is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

49. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT II
## Infringement of U.S. Patent No. 9,942,705

50. Plaintiff incorporates the above paragraphs by reference.

51. Domino's without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

52. Domino's thus has infringed at least claims 1, 2, 8, 10-14, 20 and 22-24 of the '705 Patent literally and/or under the doctrine of equivalents.

53. Further, Domino's directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, Domino's has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Domino's to make and use the Accused Products in an infringing manner.  Still further, Domino's is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

54. As shown above in Figs. 2 and 3, Domino's is making, using, and offering for sale the Accused Products.

55. Additionally, Domino's owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

56. On information and belief, Domino's has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '705 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2

(E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Domino's direct and indirect infringement of the '705 Patent has been undertaken with knowledge of the patent, rendering Domino's liable for direct infringement, indirect infringement, and willful infringement.

57. In addition or in the alternative, Domino's, through its above described notice, indirectly infringed by way of inducing direct infringement by Domino's customers and/or contributing to the infringement by Domino's customers of the '705 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '705 Patent.

58. Domino's, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Domino's performed actions that induced infringement that Domino's knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

59. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 402 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

60. Domino's has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

61. As one non-limiting example, and as shown in Figs. 2 and 3 above, Domino's, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '705 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

62. Domino's has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '705 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

63. The foregoing infringement on the part of Domino's has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '705 Patent.

64. Each of Domino's aforesaid activities have been without authority and/or license from Plaintiff.

65. Plaintiff has been damaged as a result of the infringing conduct by Domino's alleged above. Thus, Domino's is liable to Plaintiff in an amount that adequately compensates it for such infringement,

which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

66. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT III
## Infringement of U.S. Patent No. 10,299,071

67. Plaintiff incorporates the above paragraphs by reference.

68. Domino's without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

69. Domino's thus has infringed at least claims 1, 5, 7, 9-11, 15, 17, 19, and 20 of the '071 Patent literally and/or under the doctrine of equivalents.

70. Further, Domino's directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, Domino's has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Domino's to make and use the Accused Products in an infringing manner.  Still further, Domino's is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

71. As shown above in Figs. 2 and 3, Domino's is making, using, and offering for sale the Accused Products.

72. Additionally, Domino's owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

73.    On information and belief, Domino's has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '071 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Domino's direct and indirect infringement of the '071 Patent has been undertaken with knowledge of the patent, rendering Domino's liable for direct infringement, indirect infringement, and willful infringement.

74.    In addition or in the alternative, Domino's, through its above described notice, indirectly infringed by way of inducing direct infringement by Domino's customers and/or contributing to the infringement by Domino's customers of the '071 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '071 Patent.

75.    Domino's, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b).  Domino's performed actions that induced infringement that Domino's knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

76.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 402 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove

intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

77. Domino's has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

78. As one non-limiting example, and as shown in Figs. 2 and 3 above, Domino's, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '071 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

79. Domino's has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '071 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

80. The foregoing infringement on the part of Domino's has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '071 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

81. Each of Domino's aforesaid activities have been without authority and/or license from Plaintiff.

82. Plaintiff has been damaged as a result of the infringing conduct by Domino's alleged above. Thus, Domino's is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

83. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

### COUNT IV
### Infringement of U.S. Patent No. 10,750,310

84. Plaintiff incorporates the above paragraphs by reference.

85. Domino's without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

86. Domino's thus has infringed at least claims 1-5, 8, 9, 12 and 13 of the '310 Patent literally and/or under the doctrine of equivalents.

87. Further, Domino's directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, Domino's has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Domino's to make and use the Accused Products in an infringing manner.  Still further, Domino's is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

88. As shown above in Figs. 2 and 3, Domino's is making, using, and offering for sale the Accused Products.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

89.    Additionally, Domino's owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

90.    On information and belief, Domino's has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '310 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Domino's direct and indirect infringement of the '310 Patent has been undertaken with knowledge of the patent, rendering Domino's liable for direct infringement, indirect infringement, and willful infringement.

91.    In addition or in the alternative, Domino's, through its above described notice, indirectly infringed by way of inducing direct infringement by Domino's customers and/or contributing to the infringement by Domino's customers of the '310 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '310 Patent.

92.    Domino's, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b).  Domino's performed actions that induced infringement that Domino's knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

93. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 402 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

94. Domino's has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

95. As one non-limiting example, and as shown in Figs. 2 and 3 above, Domino's, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '310 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

96. Domino's has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '310 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

97. The foregoing infringement on the part of Domino's has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    26

but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '310 Patent.

98.  Each of Domino's aforesaid activities have been without authority and/or license from Plaintiff.

99.  Plaintiff has been damaged as a result of the infringing conduct by Domino's alleged above. Thus, Domino's is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

100.  Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT V
## Infringement of U.S. Patent No. 11,778,415

101.  Plaintiff incorporates the above paragraphs by reference.

102.  Domino's without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

103.  Domino's thus has infringed at least claims 1-5, 7-18 and 21-23 of the '415 Patent literally and/or under the doctrine of equivalents.

104.  Further, Domino's directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages. Further, Domino's has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Domino's to make and use the Accused Products in an infringing manner. Still further, Domino's is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

105.   As shown above in Figs. 2 and 3, Domino's is making, using, and offering for sale the Accused Products.

106.   Additionally, Domino's owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

107.   On information and belief, Domino's has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '415 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Domino's direct and indirect infringement of the '415 Patent has been undertaken with knowledge of the patent, rendering Domino's liable for direct infringement, indirect infringement, and willful infringement.

108.   In addition or in the alternative, Domino's, through its above described notice, indirectly infringed by way of inducing direct infringement by Domino's customers and/or contributing to the infringement by Domino's customers of the '415 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '415 Patent.

109.   Domino's, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b).  Domino's performed actions that induced infringement that Domino's knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                            28

that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

110.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 402 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

111.   Domino's has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

112.   As one non-limiting example, and as shown in Figs. 2 and 3 above, Domino's, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '415 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

113.   Domino's has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '415 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                   29

114. The foregoing infringement on the part of Domino's has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '415 Patent.

115. Each of Domino's aforesaid activities have been without authority and/or license from Plaintiff.

116. Plaintiff has been damaged as a result of the infringing conduct by Domino's alleged above. Thus, Domino's is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

117. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Domino's as follows:

1.   Declaring that Domino's has infringed the Patents-in-Suit;

2.   Awarding Plaintiff its damages suffered because of Domino's's infringement of the Patents-in-Suit;

3.   Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Domino's's willful infringement of the Patents-in-Suit;

4.   Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

5.   Granting Plaintiff such further relief as the Court finds appropriate.

## **JURY DEMAND**

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    30

Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT